Luis A. Archilla Laugier et al., Petitioners and Appellees, *v.* Insular Racing Commission, etc., Respondents and Appellants.

No. 10333. Argued February 8, 1951.—Decided April 19, 1951.

398

Diego O. *Marrero* for appellants. *Luis A. Archilla Laugier* pro se, and *José E. Bosch Roqué* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Appellees herein filed a petition for mandamus in the District Court of San Juan on January 25, 1950. They alleged that, for many years, the Insular Racing Commission has issued licenses in their favor as owners of race horses, which have been annually renewed upon filing applications to that effect and paying the corresponding fees; that in December 1949, and after having registered horses in their names, they applied for the renewal of their licenses sending the necessary fees, and the Secretary of the Commission notified them that their applications had been denied; that the reconsideration requested by them was

also denied without hearing them or giving them an opportunity to defend themselves; that it is the duty of the Insular Racing Commission, as well as of its Secretary to renew licenses; that in case the renewal of such licenses were within the discretion of the commission, the latter's refusal without filing a complaint against them, without a hearing, and with no explanation whatsoever, in an arbitrary and capricious manner, constitutes an abuse of discretion; that such an illegal action is causing them grave and irreparable damages, and that they file the petition for mandamus because they have no other speedy, adequate and effective remedy. Appellees pray that respondents be ordered to immediately renew their licenses as horse owners for the year 1950, as well as to provide any temporary measure either in aid or relief of its jurisdiction, or to enforce the judgment that might be rendered in favor of the petitioners; and that they are ready to give any bond the court may deem reasonable.

The following day the Secretary of the court issued the summons,[1] and four days later the district court itself entered a restraining order, directing respondents to renew petitioners' licenses as horse owners in the race tracks of Puerto Rico, subject to a bond in the amount of $1,000, and stating that same would be in force for 10 days. Respondents prayed for the suspension and modification of the restraining order, and on February 3 the lower court modified same by ordering respondents to issue to petitioners temporary licenses as horse owners until it were determined whether it was proper to issue the restraining order. Subsequently, and after the parties were heard, the lower court entered a peremptory writ of mandamus directing respondents, their successors, employees, agents or successors in interest, to issue, upon receipt of same, to Soto and Archilla Laugier, their licenses for 1950 as horse owners. Respond-

---

[1] See *Martínez* v. *Morales*, *ante*, p. 200.

ent appealed. They also filed in this court a petition for certiorari when the lower court directed, at the request of the appellees herein and in order to secure the effectiveness of the judgment, that in compliance with the writ entered, respondents issue a temporary license in favor of petitioners as horse owners. We issued the writ of certiorari requested.[2]

Although respondents charge the lower court with having committed ten errors, we believe it is only necessary to discuss the fourth. This is to the effect that "The trial judge erred in intervening by means of a mandamus and in issuing a writ of peremptory mandamus inasmuch as the Racing Act denied the court any authority to intervene in the matter in this case."

■ Section 5 of the "Racing Act of Puerto Rico", Act No. 11 of April 18, 1932 (Sess. Laws, p. 194), as amended by Act No. 165 of May 9, 1940 (Sess. Laws, p. 960), provides that:

"The Insular Racing Commission is hereby empowered to regulate all matters concerning the sport of racing, and for the purpose it shall have power to prescribe the rules and conditions by which the holding of horse races in Puerto Rico is to be governed; . . . by regulation to prescribe the requirements that should be fulfilled by persons engaged in any activity connected with horse racing and those wishing to obtain, and who obtain, from the Commission, licenses to operate race tracks and licenses as horse owners, . . . *Provided,* That the Insular Racing Commission may, when it so deems it advisable for the good of the sport, deny the application for any of these licenses; . . .

"*Any decision of the Racing Commission to refuse to issue a license shall be final and unappealable, and against such decision, the judges and courts shall allow no claim or judicial remedy whatever, either ordinary or extraordinary.*" (Italics ours.)

Section 5 also confers on the Insular Racing Commission certain powers, and provides further that:

---

[2] See Certiorari No. 1863, *Insular Racing Commission* v. *Hon. J. Martín Almodóvar, Judge.*

"All these powers shall be prescribed in regulations which shall be approved by the Governor of Puerto Rico, and after the said official has given his approval, said regulations shall have the force of law, and the courts of justice shall have judicial cognizance thereof."

The Regulation adopted by the Commission under the authority granted it, provides in § 42 that:

"Any person, society, or stable who has or in the future may have horses registered in his name, must obtain a license as horse owner by addressing a written request to the Insular Racing Commission and upon payment of twenty (20) dollars; . . ."

And in § 44 that:

*"The licenses as horse owners shall expire on the 31 of December of each year, and it shall be necessary in order to renew same, for the interested parties to request it in writing from the Secretary of the Insular Racing Commission, stating the names of the horses he owns."* (Italics ours.)

After referring to the Sections of the Act and of the regulation above quoted, the lower court stated in its Statement of the Case and Opinion that the case before it was one for the renewal and not for the issuance of a license, and that, after an original license was issued, the refusal to renew it meant a cancellation or revocation thereof, as no provision of law authorized the conclusion that the license was automatically cancelled or revoked at the expiration of one year, but rather subject to a renewal at the request of the interested party. The Court went on saying that if the denial to renew a license was tantamount to a cancellation or revocation of same, § 7 of the Act was applicable,[3] as said

---

[3] Section 7 of Act No. 11 of 1932, as amended by No. 17 of July 15, 1935 (Spec. Sess. Laws, p. 92), provides insofar as pertinent:

". . . for the cancellation of any of the licenses issued by the Insular Racing Commission, the latter shall grant the party a previous hearing and the opportunity to defend himself; *Provided, further,* That any resolution of the Insular Racing Commission cancelling the license of any race-track shall be appealable to the district court of the place where the appellant resides. . . . "

Section, although it gives the Commission the right to revoke, cancel or suspend temporarily the license granted, also provides that in order to cancel any of the licenses the Commission shall grant the interested party a previous hearing giving him the opportunity to defend himself.

The first question to be determined is, of course, whether or not the lower court had jurisdiction to take cognizance of the mandamus petition. As we have seen, § 5 of the Act of 1932, *supra*, prohibits emphatically and expressly any claim or judicial remedy, ordinary or extraordinary, against any decision of the Racing Commission refusing to issue a license. If this provision were to prevail, it is evident that any court intervention would be ineffective. Nevertheless, as § 48 of our Organic Act (48 U.S.C. § 872) provides that " . . . the District Courts may grant writs of mandamus in all proper cases," it is obvious that what is stated in § 5, cannot be interpreted as depriving the lower court of jurisdiction to grant writs of mandamus, nor, therefore, to entertain the petition filed therein.

From the case at bar it appears that the petitioners were horse owners; that they registered the horses in their names in the Insular Racing Commission, and that when they requested the renewal of their licenses, the Commission refused to issue them without a hearing, without an opportunity to defend themselves, and without stating the grounds on which it based its refusal.

We admit that in harmony with the provisions of the Act, the respondent Commission was fully empowered to adopt regulations which, once they were approved by the Governor, had the force of law. Also, that in behalf of the racing sport the Commission was empowered to refuse the application of any license related to the sport of racing. Nevertheless, it has been repeatedly held that when by legislation the state delegates in a governmental agency the power to issue licenses to practice a profession, or become engaged in a business or occupation which is not inherently

detrimental to public welfare, such a license, once granted, becomes a valuable personal right that can in no way be subsequently revoked or impaired except by due notice and a just and fair hearing in an unbiased court or board. In the present case, we repeat, petitioners were granted licenses as horse owners which, by express provision of § 44 of the Regulation, expired December 31 of each year, and had to be renewed from year to year in case the persons to whom they were granted so desired. Under the above stated circumstances, the refusal to renew their licenses was equivalent, as stated by the court *a quo*, to their cancellation, and the respondent Commission could not, under its power to renew licenses each year, prejudice petitioners' right to obtain them, unless it ordered the holding of a hearing, give them the opportunity to be heard and decided that there were grounds of importance to refuse their issuance. See § 7 of Act No. 11 of 1932 as it appears in footnote 3; *Las Monjas Racing Corp.* v. *Racing Commission*, 67 P.R.R. 42, 46; *State* v. *Oterholt*, 15 N.W. 2d 529, 531; *Leakey* v. *Georgia Real Estate Commission*, 55 S. E. 2d 818, 819; *State* v. *Swearingen*, 22 N.W. 2d 809, 812; XLV Columbia Law Review (1945), p. 67 *et seq.*; and Gellhorn, Administrative Law, Second Edition, 1947, p. 275.

Since petitioners were not given an opportunity to be heard, the decision of the Commission refusing the licenses applied for was contrary to law. The lower court therefore was correct in entering the judgment it did.

The other errors assigned to the effect that the lower court erred in entering a mandatory restraining order *ex parte;* in establishing by judicial *fiat* the procedure to be followed by the respondent Commission in issuing a license as the one requested by the petitioners; in issuing a peremptory writ of mandamus based on the ground that the refusal to renew a license was equivalent to its cancellation; in holding that the renewal of such license was only a fiscal matter,

and that the power granted to the Commission by § 5 of the Act is not so final as to refuse a renewal of a license without a hearing, do not require further discussion.

Judgment appealed from will be affirmed.